IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FREE AND FAIR ELECTION FUND, *et al.*, | ) |
| | ) Case No. 2:16-cv-4332 |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MISSOURI ETHICS COMMISSION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| and | ) |
| | ) |
| MISSOURI ELECTRIC COOPERATIVES | ) |
| d/b/a ASSOCIATION OF MISSOURI | ) |
| ELECTIC COOPERATIVES, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**FREE AND FAIR ELECTION FUND PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to 42 U.S.C. § 1988 and the May 5, 2017 and May 17, 2017 Orders of this Court entering a permanent injunction against Defendants, the Free and Fair Election Fund ("FFEF") Plaintiffs respectfully move that the Court award the FFEF Plaintiffs their reasonable attorneys' fees, costs, and expenses as follows:

**I.   Introduction and Factual Background**

Defendant Missouri Ethics Commission ("MEC") is a state agency acting under Missouri's executive branch. The MEC investigates and enforces Missouri's campaign finance laws, and is composed of six members appointed by the Governor with the Missouri Senate's

advice and consent. Each MEC commissioner is a Missouri citizen and resident, and serves a four-year term. Currently, the commission members are Chair Nancy Hagan, and Vice Chairs Bill Deeken, Eric L. Dirks, Don Summers, Kim Benjamin, and George Ratermann.

On December 23, 2016, Plaintiffs Free and Fair Election Fund ("FFEF"), Missourians for Worker Freedom ("Worker Freedom"), American Democracy Alliance ("ADA"), John Elliott ("Elliott"), Herzog Services, Inc. ("HSI"), and Farmers State Bank ("Farmers") (collectively "FFEF Plaintiffs") brought suit in this Court against the MEC, its commissioners in their official capacities, and James Klahr in his official capacity as Executive Director of the MEC.[1] Case No. 16-4332, ECF No. 1. FFEF is a Missouri PAC and continuing committee. FFEF's purpose is to receive monetary contributions and make independent expenditures to influence voters. Worker Freedom is a Missouri campaign committee. ADA is a Missouri not-for-profit corporation organized under chapter 355, with its principal place of business in Jackson County, Missouri. Elliott is a Missouri citizen and taxpayer. HSI is a for-profit corporation organized under Kansas law, but its principal place of business is in Missouri and it has authority to transact business in Missouri. Farmers is a Missouri chartered bank organized under chapter 362, and is a Missouri citizen and taxpayer, with its principal place of business in Missouri.

On November 8, 2016, Missouri voters adopted by plebiscite a Missouri constitutional amendment regarding campaign finance, Amendment 2. After Amendment 2's enactment, the FFEF Plaintiffs wished to engage in political speech protected under the First Amendment to the U.S. Constitution—political contributions. The FFEF Plaintiffs were chilled from engaging in such political speech by the plain terms of Amendment 2 (now at Article VIII, Section 23 of the

---

[1] Freedom PAC was initially a Plaintiff, but a stipulation of dismissal as to Freedom PAC (ECF No. 42) was filed, after which the Court dismissed Freedom PAC from the lawsuit (ECF No. 45).

Missouri Constitution). Amendment 2 stated that the FFEF Plaintiffs "shall": be punished with civil and criminal sanctions for violating Amendment 2's plain terms.

Faced with a reasonable apprehension of civil and criminal sanctions for engaging in First Amendment activity, the FFEF Plaintiffs brought suit under 42 U.S.C. § 1983 for a declaratory judgment finding certain provisions in Amendment 2 unconstitutional and a permanent injunction preventing Defendants from exercising their constitutional and statutory duties to uphold the law. The FFEF Plaintiffs' Petition challenged, *inter alia,* the Amendment 2's source prohibitions on contributions to political action committees and ballot measure campaign committees, as well as the contribution limits' application to PAC contributions and the limits' alleged application to "contributions made by . . . any person other than the candidate in any one election[.]" Mo. Const. art. VIII, § 23.3(1).

This quick moving case faced an initial delay outside of the FFEF Plaintiffs' control. On December 23, 2016, the FFEF Plaintiffs filed a Motion for Leave to File Excess Pages seeking relief from the Court's local rule limiting suggestions to fifteen pages. ECF No. 3. The FFEF Plaintiffs sought to file a Motion for Preliminary Injunction and Suggestions in Support with respect to each of the FFEF Plaintiffs' seven claims. On December 30, 2016, counsel for the Defendants declined to join or oppose the request for leave. On January 17, 2017, the FFEF Plaintiffs filed a Motion for Preliminary Injunction with a fifteen-page version of their Suggestions in Support, in compliance with the Local Rules. ECF Nos. 15-16. On January 18, 2017, the Court denied the FFEF Plaintiffs' Motion for Preliminary Injunction without prejudice and granted the FFEF Plaintiffs' request to file suggestions exceeding fifteen pages in length. ECF No. 17. The next day, January 19, 2017, the FFEF Plaintiffs filed a Motion for Preliminary Injunction on all seven of their claims in this case. Defendants filed a Motion for Extension of

Time to File a response to the Motion for Preliminary Injunction. ECF No. 21. The FFEF Plaintiffs agreed to short extension to accommodate Defendants, but could not agree to a prolonged extension sought by Defendants due to Plaintiffs' ongoing irreparable harm. Around this time, the FFEF Plaintiffs reached out to Defendants' counsel offering to settle the case as to some or all claims if Defendants would enter into an agreed injunction. Defendants declined and proceeded on a litigation track.

Thereafter, the Court consolidated FFEF's challenge with a case later transferred to it brought by Plaintiffs Association of Missouri Electric Cooperatives ("AMEC"), Association of Missouri Electric Cooperatives PAC ("AMEC-PAC"), David Klindt ("Klindt"), and Legends Bank (collectively "AMEC Plaintiffs"). The AMEC Plaintiffs also sought a preliminary injunction. The Court set a hearing on Plaintiffs' motions for preliminary injunction. ECF No. 25.

Defendants filed one motion to dismiss the FFEF Plaintiffs' case. Defendants filed an additional motion to dismiss the AMEC Plaintiffs' case (which the Court eventually granted). The Court expedited the briefing so that all motions were fully briefed prior to the hearing. ECF No. 30, 32. The Court converted Defendants' motions to dismiss to motions for judgment on the pleadings. ECF No. 41. The same day the motions to dismiss were filed, the MEC issued advisory opinions containing new interpretations of several provisions challenged by the FFEF Plaintiffs.

On February 17, Defendants filed their Answer to the FFEF Plaintiffs' Verified Petition. ECF No. 33. Also on Friday, February 17, 2017, after business hours, counsel for Defendants indicated by email that Defendants would not make any stipulations in this case. Additionally, Defendants counsel indicated for the first time that Defendants wished to depose the corporate

4

representative of the FFEF Plaintiffs which were political committees: FFEF, then-plaintiff Freedom PAC, and Worker Freedom. The FFEF committee plaintiffs disagreed that a deposition was necessary to resolve any of the claims in this case; however, FFEF and Worker Freedom agreed to a Rule 30(b)(6) deposition. On February 22, 2017, Defendants reversed their positions on stipulations and agreed to stipulations as to the admissibility of affidavits as testimony, provided that FFEF Plaintiffs provide new affidavits. On February 24, 2017, Defendants deposed FFEF and Worker Freedom, the deadline set for the close of discovery by the Court. Freedom PAC sought and obtained dismissal from the case. ECF No. 42. The last minute discovery caused the remaining FFEF Plaintiffs to seek relief from the Court from certain pretrial deadlines, ECF No. 44, which the Court granted. ECF No. 46. On February 28, 2017, pursuant to Federal Rule of Civil Procedure 65(a)(2), the Court consolidated the planned preliminary injunction hearing with the trial on the merits, over Defendants' objections. ECF No. 63.

On March 3, 2017, the Court held a consolidated hearing on all plaintiffs' motions for preliminary and permanent injunction. During the hearing, the Court found several areas of agreement among the parties, and encouraged the parties to continue their dialogue regarding potential resolution of this matter. ECF No. 88. At the hearing, the Court also asked the parties to submit post-hearing briefing regarding a the MEC's practice of withdrawing advisory opinions. The FFEF Plaintiffs prepared a thorough response to the Court's questions. ECF No. 77.

After the hearing, the parties engaged in a dialogue regarding settlement, but were unable to resolve all claims. However, the parties agreed to a proposed consent judgment regarding the constitutionality and enforcement of Amendment 2's ban on corporate and union contributions to a ballot measure committee. ECF No. 79. The Court's May 5, 2017 and May 17, 2017 Orders incorporated this parties' consent judgment. ECF Nos. 88, 92. The Court permanently enjoined

enforcement of Section 23's ban on corporate and union contributions to a ballot measure committee.

The Courts May 5, 2017 and May 17, 2017 Orders of permanent injunction grant the FFEF Plaintiffs substantially all of the relief they sought on their as-applied challenges under Count I—the source prohibitions in Sections 23.3.(12) and (16)(c); Count III—the source prohibitions in Sections 23.3.(12) and (16)(c) as applied to PACs that make only independent expenditures; Count IV—the source prohibitions in Section 23.3(3) and 23.3(16)(c), and Counts VI and VII—the contribution limits as applied to contributions to entities, including PACs, other than candidates. The Court declined to grant Plaintiff Elliott relief on his Count V, which argued that the limits in Section 23.3(1) were aggregate limits, but the Court did "permanently enjoin[] Defendants from enforcing Article VIII, Section 23.3(1)(a) of the Missouri Constitution against a person whose contribution to elect a single individual to office in a single election does not exceed $2,600 per election, allowing for an adjustment of the contribution limit as described in Section 23.3(18)." ECF No. 92. The FFEF Plaintiffs agreed to dismiss their Count II claim under the Privileges and Immunities Clause, which presented an alternative theory to obtain substantially similar relief to that ultimately granted by the Court on Count I and Count III.

The FFEF Plaintiffs received substantially all of the relief they sought in this case. While the Court declined to adopt a broad facial holding invalidating all of Sections 23.3(1), 23.3.(12), (16)(c), the Court provided each of the FFEF Plaintiffs relief on the substance of their claims, apart from Elliott's Count V.

## II.     Requested Attorneys' Fees, Costs, Expenses, and Interest

The FFEF Plaintiffs request that this Court determine and award their attorneys' fees, costs and interest. The purpose of 42 U.S.C. §1988 is to "promote diffuse private enforcement of

civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators." *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993)). A plaintiff may be considered a prevailing party if he "succeeds on any significant issue in litigation which achieves some of the benefit … sought in bringing suit." *Id.* at 433. "When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were distinct in all respects from his successful claims." *Emery*, 272 F.3d at 1046 (quoting *Hensley*, 461 U.S. at 440). "Claims are related, and hence deserving of compensation, if they involve a common core of facts or are based on related legal theories." *Id.*

Here, the FFEF Plaintiffs prevailed on their claims in Counts I, III, IV, VI, and, VII (*see* ECF No. 92 at 23–24). Count II presented an alternate legal theory based on the same facts as Count I. Count V presented an additional claim by Plaintiff Elliott that the Court denied, but Plaintiff Elliott obtained the relief related to his claim under Count V through his alternative claim under Count VII. Under the FFEF Plaintiffs' Count VII, the Court permanently enjoined Defendants to enforce the limits in Article VIII, Section 23.3(1) as "per-candidate, per election" limits, resolving the subjective chill felt by Plaintiff Elliott under Counts VII and V. The FFEF Plaintiffs' claims are based on a common core of operative facts – desired political contributions. Therefore, Plaintiffs claims "are related, and hence deserving of compensation . . . ." *Emery*, 272 F.3d at 1046. Certainly, none of the relief sought by the FFEF Plaintiffs that the Court refused to enter was "distinct in all respects from the [their] successful claims. *Id.*

The Eight Circuit's jurisprudence sets forth the appropriate method for calculating attorneys' fees awards, as follows:

7

the procedure described by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....known as the "lodestar" method, *id.* at 433, focuses on "the significance of the overall relief obtained by the plaintiff in relation to the hours actually expended on the litigation." *Id.* at 435. The district court multiplies the number of hours reasonably expended by the relevant market rate for legal services, then reduces the amount for partial success, if necessary.

*Jensen v. Clarke*, 94 F.3d 1109, 1129 (8th Cir. 1996). The FFEF Plaintiffs will discuss in this section their lodestar calculation. Courts also frequently apply the twelve factors set forth in *Hensley*, *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9TH CIR. 1975), which the FFEF Plaintiffs will discuss as well.[2] *See also United Health Care Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 575 n.9 (8th Cir. 1996).

### A. The Appropriate Hourly Rate

This case was filed and adjudicated in the U.S. Federal District Court for the Western District of Missouri. It was assigned to the Central Division. The FFEF Plaintiffs submit that the standard hourly rate in the Western District of Missouri for attorneys with the qualifications of Mr. Greim ranges from $375 to $550 per hour. *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) ("The 'relevant community' for determining hourly rates is the place where the case was tried"), citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982). The FFEF Plaintiffs further submit that the standard hourly rate in the Western District of Missouri for attorneys with the qualifications of Mr. Simpson ranges from $250 to $310 per hour. Lowell D. Pearson of Jefferson City submits his Declaration (Exhibit C)

---

[2] The twelve *Hensley* factors are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3; *see also Felton v. City of Adrian, Mo.*, 2013 WL 822160, at *2 (W.D. Mo. 2013).

8

attesting that the rates claimed by Mr. Greim ($435 to $445 per hour) and by Mr. Simpson ($265 to $285 per hour) are reasonable and in accord with the prevailing rates in the territorial jurisdiction of the U.S. District Court for the Western District of Missouri, given their qualifications and experience, for civil rights litigation.

Additionally, the FFEF Plaintiffs encourage this Court to rely upon its own expertise and knowledge of the Western District of Missouri's prevailing rates in making its determination. *Trickey v. Kaman Indus. Technologies Corp.*, 705 F.3d 788, 807 (8th Cir. 2013), quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *see also Lindy Bros. Builders v. American Radiator & Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir. 1973); *Akron Center For Reproductive Health v. City of Akron*, 604 F. Supp. 1275, 1288 (N.D.OHIO 1985). *See White v. McKinley*, 2009 WL 813372 *7-8 (W.D.MO. 2009) (awarding hourly rates of up to $450 for experienced civil rights counsel).

The FFEF Plaintiffs were forced to expend significant legal resources in this case in order to vindicate their First Amendment rights. This case concerned a developing area of the law where the First Amendment intersects with state campaign finance regulation. In 2010, the United States Supreme Court expressly overruled its former jurisprudence, finding in *Citizens United* that corporations are entitled to free speech through independent expenditures. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 319, 340 (2010). This decision left many of the Court's other previous campaign finance decisions on "shaky ground." *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 879 n.12 (8th Cir. 2012).

There are relatively few practitioners nationwide and only a handful in Missouri who counsel clients attempting to navigate the shaky ground of campaign finance. Even fewer attorneys litigate such cases. This case was also the first to interpret a new constitutional amendment passed by Missouri voters and necessarily addressed complicated issues of state

9

constitutional and statutory construction related to the FFEF Plaintiffs' alleged chill. The FFEF Plaintiffs' counsel would not have agreed to take the case without the assurance of payment of their normal hourly rates. The FFEF Plaintiffs' counsel devoted substantial attention and care to the matter over a short period of time and worked hours (as did Defendants' capable counsel) far in excess of normal business hours, reading filings at midnight and drafting at all hours (and weekends) to keep up with the press of other business.

This complicated seven-claim case was fully litigated through a final hearing less than 80 days after filing. Keeping these deadlines was not easy. FFEF and Worker Freedom were forced to thoroughly prepare for and sit for a corporate representative deposition on multiple topics with less than one week's notice. To date, Defendants' need for the time and expense of live depositions, rather than written questions or an affidavit, remains unclear. As discussed at length in the Factual Background section, there was an easy way out of this case: Defendants had the full opportunity to minimize the issues in this case through an early consent judgment. Defendants' counsel even admitted at the hearing in this matter that Defendants did not oppose such a consent judgment. But, after the hearing, Defendants shifted positions, forcing Plaintiffs to continue litigating the case to date.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Emery*, 272 F.3d at 1047 (quoting *Hensley*, 461 U.S. at 435). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. As stated above, the FFEF Plaintiffs obtained excellent results, winning broad protections for political speech to flourish in Missouri.

10

The public purpose of the litigation also weighs in favor of a full fee award. The result obtained by the FFEF Plaintiffs benefit the state of Missouri through strong enforcement of First Amendment rights. The implications are far reaching and it would be unfair for the FFEF Plaintiffs to absorb any costs of this litigation given the public benefits from this Court's Order. Therefore, the FFEF Plaintiffs should recover a fully compensatory fee.

### B. The Hours Expended and Reasonableness

Attached hereto as Exhibit A is the Declaration of the FFEF Plaintiffs' lead counsel in this case, Edward D. Greim, attesting to his qualifications and to the amounts of hours and costs which have been expended in this Court in pursuing the FFEF Plaintiffs' Verified Complaint by Graves Garrett attorneys, including Alan T. Simpson. Also attached hereto are Exhibit B—the \ Declaration of FFEF Plaintiffs' counsel Alan T. Simpson—and Exhibit C the Declaration of Lowell D. Pearson, a prominent practitioner in the U.S. District Court for the Western District of Missouri. Mr. Pearson's Declaration attests to the reasonable hourly rates charged by Mr. Greim and Mr. Simpson, considering their qualifications and experience.

The hours expended by counsel are documented by computer printouts, which are accurate and routinely-prepared compilations of the daily contemporaneous time-sheets which they maintain in the normal course of their business. Out-of-pocket expenditures and costs are also documented by a computer printout of the expenditures made for this case, which are accurate and routinely-prepared compilations of the daily contemporaneous records of necessary expenditures which are maintained in the ordinary course of business. *See* Exhibit A and Exhibits 1–3 for a more detailed explanation of these printouts.

A true and accurate copy of the billings for the district court litigation is attached as Exhibits 2 and 3 to Mr. Greim's Affidavit ( Exhibit A). The following explains the hours expended by each attorney, multiplied by the hourly rate to obtain a total amount (the "lodestar" amount).

|  | Rate | Hours | Total |
|---|---|---|---|
| Edward D. Greim | $445.00 | 36.5 | $16,242.50 |
| Edward D. Greim | $435.00 | 81.4 | $35,409.00 |
| Alan T. Simpson | $285.00 | 76.3 | $21,745.50 |
| Alan T. Simpson | $265.00 | 335.8 | $88,987.00 |
| Justin Whitworth | $235.00 | 14.5 | $ 3,407.50 |
| Rebekah S. Badell | $170.00 | 20.9 | $ 3,553.00 |

The total number of hours expended on this Motion to the date of this filing is 11.3 hours. Exhibit 1. The lodestar amount for this work is $3,540.5 and should not be subject to reduction. Exhibit A.

To summarize the attorneys' fees:

| | |
|---|---|
| District Court Litigation work | $165,804.00 |
| Motion for Attorneys' Fees and Costs work | $   3,540.50 |

## III.  COSTS

"Reasonable expenses incurred in representing a client in a civil rights case should be included … if such expenses are usually billed in addition to the attorney's hourly rate." *Case v. Unified School Distr. No. 233*, 157 F.3d 1243, 1257-58 (10th Cir. 1998). The costs incurred in representing FFEF Plaintiffs during the trial court litigation are set out in the statement of costs

12

submitted in support of this application. *See* Exhibit 3 to Greim Affidavit. They include the filing fee, certified copies, deposition transcripts, online research and travel expenses. These costs are of a kind and amount normally incurred in the course of litigation such as this one. Exhibit A. The FFEF Plaintiffs request that Defendants be ordered to pay $2,077.12 for costs.

## IV.  INTEREST

A prevailing party is entitled to post-judgment interest, which is calculated to affect the entire judgment, including attorneys' fees and costs. *See Mill Pond Assoc, Inc. v. E&B Giftware, Inc.*, 751 F. Supp. 299, 302-303 (D. Mass 1990). Post-judgment interest is calculated from the date the court first determines that the prevailing party is entitled to an award of attorneys' fees, rather than the date the fees are quantified. *Jenkins By Agyei v. State of Missouri*, 931 F.2d 1273 ($8_{th}$ Cir. 1991). In this way, the "make-whole objective of fee awards in civil rights cases" is served. *Id.* at 1276. Post-judgment interest is calculated to affect the entire judgment, including attorneys' fees and costs. *See Mill Pond Assoc, Inc. v. E&B Giftware, Inc*., 751 F. Supp. 299, 302-303 (D. Mass. 1990). Interest should be calculated based on the federal rate whether the claims are brought under federal or state law. *McDonaugh v. City of Quincy*, 353 F. Supp.2d 179, 183-84 (D. Mass. 2005). The interest is calculated at a rate equal to the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of the judgment. 28 U.S.C. §1961.

The date of the judgment was May 5, 2017. The rate for the preceding calendar week was 0.718%, which can be found on the Federal Reserve website at http://www.federalreserve.gov/Releases/H15/.

## V. CONCLUSION

Based on the foregoing, the Affidavit of Mr. Greim, with Exhibits 1–3, and the Affidavits of Mrrs. Simpson and Pearson, the FFEF Plaintiffs request the following:

| | |
|---|---|
| Attorneys' fees | $169,334.50 |
| Costs | $   2,077.12 |
| Total | $171,411.62 |

Additionally, the FFEF Plaintiffs request post-judgment interest calculated from May 5, 2017 to the present at the rate of 0.718 %.

Respectfully submitted this 22nd day of May, 2017.

                              **GRAVES GARRETT, LLC**

                              */s/ Edward D. Greim*
                              Todd P. Graves (Mo. Bar #41319)
                              Edward D. Greim (Mo. Bar #54034)
                              Alan T. Simpson (Mo. Bar #65183)
                              1100 Main Street, Suite 2700
                              Kansas City, Missouri 64105
                              Tel.: (816) 256-3181
                              Fax: (816) 222-0534
                              tgraves@gravesgarrett.com
                              edgreim@gravesgarrett.com
                              asimpson@gravesgarrett.com

                              *Attorneys for Plaintiffs*

# **CERTIFICATE OF SERVICE**

I, Alan T. Simpson, certify that on May 22, 2017, a copy of the foregoing, with exhibits, was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via e-mail:

Curtis Schube
Laura E. Elsbury
Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7728
(573) 751-5660 (facsimile)
curtis.schube@ago.mo.gov
laura.elsbury@ago.mo.gov

*Attorneys for Defendants*

Charles W. Hatfield
Erin M. Naeger
James D. Bass
230 W. McCarty Street
Jefferson City, Missouri 65101
(573) 636-6263
(573) 636-6231 (fax)
chuck.hatfield@stinson.com
erin.naeger@stinson.com
james.bass@stinson.com

Additionally, I served a copy of the foregoing via email to:

Ryan Bangert
Julie Blake
ryan.bangert@ago.mo.gov
julie.blake@ago.mo.gov

*Attorneys for Defendants*

Respectfully submitted this 22nd day of May, 2017.

**GRAVES GARRETT, LLC**

*/s/ Alan T. Simpson*
Alan T. Simpson (Mo. Bar #65183)
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
asimpson@gravesgarrett.com

*Attorney for Plaintiffs*